THIRD DIVISION

 September 4, 1996 








No. 1-95-4109

COMMUNITY BANK OF GREATER PEORIA and
T. MILLER, INC., a Wisconsin corporation
qualified to do business in the State of Illinois
under the name of T.A. MILLER, INC.,

 Plaintiffs-Appellants,

 v.

LAURA CARTER, unmarried; EXECUTIVE
SECURITY DOOR MANUFACTURING CO., INC.;
UNKNOWN TENANTS; UNKNOWN OTHERS;
NON-RECORD CLAIMANTS; HARRIS
INSURANCE SERVICES, INC.; ILLINOIS FAIR
PLAN ASSOCIATION; J. I. KISLAK MORTGAGE
SERVICE CORP; and the CADLE CO.,

 Defendants-Appellees.)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)Appeal from the
Circuit Court of
Cook County.












Honorable Edwin M.
Berman,
Judge Presiding.
 PRESIDING JUSTICE TULLY delivered the opinion of the court:
 Community Bank of Greater Peoria (hereinafter Community Bank) brought
this action in the circuit court of Cook County against defendants, Laura Carter,
Executive Security Door Manufacturing Co., Inc., unknown tenants, unknown others,
nonrecord claimants, Harris Insurance Services, Inc. (hereinafter Harris), Illinois Fair
Plan Association (hereinafter Illinois Fair Plan), J.I. Kislak Mortgage Service Corp.,
and the Cadle Co., seeking a judgment of foreclosure and sale. Plaintiff T. Miller,
Inc. (hereinafter Miller), the assignee of Community Bank, obtained leave of court to
substitute for Community Bank in the foreclosure action and filed an amended
complaint requesting injunction relief ordering defendant Carter to endorse an
insurance proceeds check. The circuit court denied plaintiff's request for injunctive
relief. Following a hearing on cross-motions for summary judgment, the circuit court
provisionally granted defendant Carter's motion and denied plaintiff's motion for
summary judgment. Plaintiff filed a motion to reconsider and presented the circuit
court with additional evidence. The circuit court denied plaintiff's motion to
reconsider and dismissed with prejudice the portion of the amended complaint
requesting injunctive relief. It is from this order and the denial of its motion for
summary judgment that plaintiff now appeals pursuant to Supreme Court Rule 307
(155 Ill. 2d R. 307).
 For the reasons which follow, we reverse and remand.
 FACTUAL BACKGROUND
 Community Bank, the original mortgagee, initiated mortgage foreclosure
proceedings on the residential premises located at 6946 South Justine Street in
Chicago, against Carter, the mortgagor, in May 1993. On September 20, 1993,
Community Bank obtained a default judgment of foreclosure against Carter. The
original indebtedness of the mortgagor was $24,291.50; as of September 1993, the
principal due was $21,564.87. In November 1993, Community Bank assigned the
note and mortgage to Imperial Fund I.L.P. (hereinafter Imperial Fund). 
 In January 1994, the premises withstood substantial fire damage. At the time
of the fire, Carter had in place a fire insurance policy with Illinois Fair Plan;
Community Bank was named in the policy as the mortgagee. Subsequent to the fire,
Carter filed a claim under the insurance policy through Harris, a public adjuster.
 In March 1994, Imperial Fund assigned the note and the mortgage to Miller,
who had no knowledge of the fire damage, for $18,000. On March 28, 1994, Miller
filed a claim with Illinois Fair Plan for insurance proceeds under Carter's policy. 
Harris also filed a claim to the insurance proceeds on its own behalf. 
 On April 12, 1994, Illinois Fair Plan issued a full settlement check in the
amount of $53,559.33 made payable to Miller, Harris and Carter. Following a dispute
as to the proper division of the check, Miller obtained leave of court to substitute for
Community Bank in the foreclosure action against Carter and filed an amended
complaint. In its amended complaint, Miller added count II requesting injunctive
relief ordering Carter to endorse the insurance check and directing the payment of
the proceeds to the various parties. On February 27, 1995, the circuit court granted
Miller's motion for summary judgment, an order which the circuit court later vacated. 
On September 1, 1995, following cross-motions for summary judgment, the circuit
court denied Miller's motion and provisionally granted Carter summary judgment. 
The court continued the matter to allow Miller to provide additional evidence as to
the purchase price paid for the assignment of the note and mortgage and Miller's
knowledge of the fire damage at the time of the assignment. Miller filed a motion to
reconsider along with an affidavit of its president which set forth that Miller had paid
$18,000 for the note and mortgage and that plaintiff had no knowledge of the fire
damage until after the mortgage had been assigned.
 On November 20, 1995, the circuit court granted Carter's motion for summary
judgment. Pursuant to Miller's request, the circuit court entered a corrected order
reflecting that Miller's request for injunctive relief was denied and that count II of
the amended complaint was dismissed with prejudice. On December 5, 1995, Miller
filed a timely notice of appeal.
 ISSUE PRESENTED FOR REVIEW
 The sole issue raised on appeal is whether an assignee of a note and mortgage
succeeds to the original mortgagee's rights under a fire insurance policy obtained as
security for the mortgage debt.
 OPINION
 Summary judgment is an appropriate remedy if the pleadings, depositions and
admissions on file, together with the affidavits, if any, show that there is no genuine
issue of material fact. White v. U.S. Fidelity & Guaranty Co., 21 Ill. App. 3d 588, 592
(1974). Summary judgment motions permit the trial court to provide an expedient
means of resolution where no genuine issue of material fact exists. Purthill v. Hess,
111 Ill. 2d 229, 240 (1986). When deciding the motion, the trial court should construe
all of the evidence before it in the light most favorable to the nonmoving party. 
Great-West Life Assurance Co. v. General Accident Fire & Life Assurance Corp., 116
Ill. App. 3d 921, 926 (1983). The Illinois Supreme Court has warned that while the
summary judgment procedure is an important tool in the prompt administration of
justice, it is a drastic measure; therefore, trial courts should grant such judgment
only where the movant's right is so clear as to be free from doubt. Reed v. Bascon,
124 Ill. 2d 386, 393 (1988). Our review of a grant of summary judgment is de novo. 
Myers v. Health Specialists, 225 Ill. App. 3d 68, 72 (1992). 
 Miller argues on appeal that as assignee mortgagee, he had an equitable lien
on the proceeds from the fire insurance policy and that the assignment of the
mortgage debt automatically rendered an assignment of the insurance proceeds.
Carter contends that, although an original mortgagee has a right to insurance
proceeds derived from the mortgaged property, an assignee mortgagee does not
automatically acquire a right to such proceeds via the assignment of the mortgage. 
Under Illinois law, the well-established rule is that no particular words are required
to create a valid assignment so long as the intent to transfer is evident. In re Estate
of Martinek. 140 Ill. App. 3d 621, 629 (1986). "The assignment operates to transfer
to the assignee all of the assignor's right, title or interest in the thing assigned. 
[Citations.] The assignee by acquiring the same rights as the assignor, stands in the
shoes of the assignor." Martinek, 140 Ill. App. 3d at 629. Applying this principle to
the case at hand, we believe that Community Bank intended to transfer to Imperial
Fund and, subsequently, Imperial Fund intended to transfer to Miller all of their
rights to the mortgage, including the rights to the fire insurance policy in effect to
secure the mortgage debt. Thus, Miller would stand in the shoes of the Imperial
Fund who stood in the shoes of the original mortgagee, Community Bank, and would
have all of the rights, titles and interests of the original mortgagee.
 In her brief, Carter states that once the indebtedness of the original mortgagee
is satisfied, fully or partially, the mortgagee's insurable interest is terminated. 
Carter relies on Western Employers Insurance v. Bank of Ravenswood, 159 Ill. App.
3d 22 (1987), for the proposition that once Community Bank sold the note and
mortgage to Imperial Fund, Community Bank no longer had an insurable interest in
the property, nor did Imperial Fund, nor could Miller. Therefore, according to Carter,
at the time of the loss, Miller had no insurable interest in the mortgaged property
and, thus, no right to the proceeds of the policy. We believe this to be an inaccurate
interpretation of Western Employers. 
 In Western Employers, an insurer issued a fire insurance policy on an
apartment building. A savings and loan association, the original mortgagee, was
named in the policy. In July 1985, the mortgagee obtained a judgment of foreclosure
against the mortgagors. Later that year, the building was substantially damaged by
a fire. After the fire, the mortgagee sold the property and its right to the insurance
proceeds to two purchasers at a sheriff's sale. Subsequently, the purchasers and the
mortgagors both filed claims with the insurer. The insurer filed an action for
interpleader, and the circuit court awarded judgment to the mortgagors. On appeal,
the Western Employers court stated that, if subsequent to the fire, the mortgagee has
had its debt satisfied by purchase at a foreclosure, the mortgagee's rights are
terminated. Since, the mortgagee's debt was satisfied at the foreclosure sale, its
mortgage was extinguished and so were its rights to the insurance proceeds. 
Accordingly, its assignees, the purchasers, had no right to the insurance proceeds
either. Western Employers, 159 Ill. App. 3d at 27.
 The Western Employers court reiterated that the recovery of mortgage
insurance proceeds depends upon the sequence of two events: the foreclosure sale
and the loss. Western Employers Insurance v. Bank of Ravenswood, 159 Ill. App. 3d
22, 25 (1987); Great-West Life, 116 Ill. App. 3d at 929-30. Where the foreclosure sale
precedes the fire loss, the amount bid at the foreclosure sale was for the property in
an undamaged condition. Great-West Life, 116 Ill. App. 3d at 930. Therefore, the
mortgagee required the insurance proceeds to restore the property to its prior
condition. Great-West Life, 116 Ill. App. 3d at 930. However, where the loss to the
property precedes the foreclosure sale, the mortgagee has an election as to how he
may satisfy the mortgage indebtedness. 
 "'[First,] he may look to the insurance company for
 payment as mortgagee *** and may recover, up to the
 limits of the policy, the full amount of the mortgage debt
 at the time of the loss. In this event he would have no
 additional recourse against the mortgagor for the reason
 that his debt has been fully satisfied. 
 The second alternative available to the mortgagee is
 satisfaction of the mortgage debt by foreclosure. If the
 mortgagee elects to pursue this latter option, and the
 foreclosure sale does not bring the full amount of the
 mortgage debt at the time of the loss, he may recover the
 balance due under the policy as owner. If the foreclosure
 does fully satisfy the mortgage debt, he, of course, has no
 additional recourse against the insurance company, as his
 debt has been fully satisfied.'" Great-West Life, 116 Ill.
 App. 3d at 930 citing Nationwide Mutual Fire Insurance
 Co. v. Wilborn, 291 Ala. 193, 198 (1973) citing 5A
 Appleman, Insurance Law & Practice sec. 3403, at 301-03
 (1970). 
 The instant case is distinguishable from Western Employers, specifically
because neither Imperial Fund nor Miller bought at a foreclosure sale. Community
Bank and Imperial Fund merely transferred their interest in the mortgage debt to
their assignees. The transfers that took place resulted in no extinguishment of the
mortgage. Following the transfers, the mortgagor still had rights in the mortgaged
premises; the assignee mortgagees merely purchased the right to collect the
mortgage. This situation is fundamentally different from that of a foreclosure sale. 
Following a foreclosure sale, the mortgage itself is extinguished. The purchaser at
a foreclosure sale has not purchased the right to collect the debt as is the case in the
present litigation; rather, he has purchased the actual premises subject to the
mortgagor's right of redemption. Once a debt has been fully satisfied at a foreclosure
sale, an original mortgagee has no right to the insurance proceeds, for the mortgagee
may not collect more than the amount of the debt. Western Employers Insurance,
159 Ill. App. 3d at 26. 
 Since Imperial Fund and Miller did not purchase at a foreclosure sale, the debt
was never extinguished. Thus, both assignees acquired the same rights and interests
as those of the original mortgagee. Even though Miller purchased the mortgage after
the fire, he was not purchasing damaged property but the right to collect the
mortgage debt on such damaged property. He paid a reasonable amount for such
mortgage with the expectation that he was acquiring all of the original mortgagee's
rights, including the right to the insurance proceeds, and thus putting himself in the
shoes of the original mortgagee. Accordingly, we find that, when Miller purchased
the mortgage and note, the right to the insurance proceeds, originally held by
Community Bank, was transferred to Miller as well. If this court were to hold
otherwise, future mortgagees would find it difficult, if not impossible, to transfer their
rights at a private sale following a loss. If potential assignees know that they will
have no rights to the insurance proceeds, they will not purchase a mortgage,
regardless of the amount owing on the debt, for an amount in excess of the value of
the damaged premises. Because of the loss that the original mortgagee would
sustain, he will be forced to retain his mortgage or conduct foreclosure proceedings. 
This, in effect, would be an unnecessary restraint on the alienation of property, a
result contrary to the public policy of Illinois. 
 In light of the foregoing, we find that the circuit court erred in granting
summary judgment to Carter and in dismissing count II of the amended complaint. 
We therefore, direct the circuit court to enter summary judgment in favor of Miller
and to adjudicate any other conflicting claims as to the insurance proceeds.
 Accordingly, the judgment of the circuit court of Cook County is reversed and
remanded for further proceedings not inconsistent with the views presented herein.
 Reversed and remanded with directions.
 CERDA and GREIMAN, JJ., concur.